May it please the Court, good morning, Your Honors. My name is Zulu Ali and I represent the petitioner in this matter, Ms. Enunwe. The issues in this matter are, number one, whether the motion to reopen was untimely and numerically barred as applied by the Board of Immigration of Appeals and whether there was an erroneous findings that there was no evidence of changed country conditions. With regards to the issue of the timeliness and the numerical bar that was applied by the Board of Immigration of Appeals that we submit that that was inappropriate and not properly applied because this was a matter that was based upon changed country conditions and I believe under immigration and nationality law under 240C, that should not be applied whenever there is an allegation under a motion to reopen based upon changed country conditions. Well, sure, you can get over the time bar if you can demonstrate there have been changed country conditions and I understand that the BIA just determined that you didn't show changed country conditions. Yes, Your Honor. Well, I believe that there was actually substantial evidence that contradicts the findings by the Board of Immigration of Appeals. The evidence that was submitted with the motion to reopen included the petitioner's declaration. A declaration and then some exhibits from some reports that were taken off the internet. There were articles, Your Honor, one of those being. Articles. Yes, Your Honor. One being an ABC news articles and news articles are where the Board of Immigration of Appeals have found that news articles were not sufficient evidence whenever you're filing for a motion to reopen. Oftentimes, there are the Department of State country reports are often used. However, because the State Department country reports are done annually, often whenever there's new evidence. So let me ask you this. In your opinion, from the time of her first, when she would have had her first hearing until the time of the motion, what do they show? Under the ABC news articles and the other articles, it shows that in 2013, there were attacks on Christian by an Islamic extremist group by the name of Boko Haram. Now, there had been ongoing issues with Islamic extremists attacking Christians in the northern part of Nigeria. However, in 2013, that expanded, according to the news articles, into central and southern Nigeria. And the reason that that would be significant with regards to someone's eligibility for asylum is that typically in an asylum case, you would have to show that there's nowhere in the country that you can go where you could avoid the persecution. However, she's a Christian. She's a Christian, yes, Your Honor. And she's from the southern part of Nigeria? Correct, Your Honor. And because now that the northern part of Nigeria where they had traditionally been persecuting Christians, according to the articles, this was expanding into central and southern Nigeria, which had a substantial impact on her eligibility for asylum. Yeah. What did the State Department reports for 2010, 2011, 2012, 2013 show? And why didn't you submit some of those to the immigration judge or to the BIA? Well, the State Department reports that had the most recent State Department reports had no information with regards to any of the newly developed incidents regarding the Islamic extremists attacking the Christians because it was towards, I believe, maybe March of 2013 when this began to happen. So the 2013 report was not available, but the 2013 report does show dramatic increase in attacks on Christians and the activities of Boko Haram throughout the country, correct? Well, Your Honor, I'm not going to say that because I don't know whether the State Department, and I can't say because I don't know whether the newly report after the incident would have reflected that. So I can't represent that to the court. The only information that I can represent at this time is the fact that during the mid, somewhere along the mid, I believe it was March of 2013, is when this reflected. And which I think is significant. It would have had, again, as I stated earlier, would have had a significant impact on her ability or her eligibility for asylum, which was, again, not taken into consideration by the court. So the other thing you have to show in a motion to reopen is a prima facie case. Correct. So how did you demonstrate that? What is the prima facie case? She's seeking asylum, right? Correct, Your Honor. On basis of her religion. Correct, Your Honor. And so we felt that there was a prima facie case. We did attach a copy of the I-589, the asylum application, and we mentioned both asylum as well as the relief under the Convention Against Torture and withholding of removal. There might have been some issues because she did have a prior removal order in absentia, which would have impacted, potentially impacted her eligibility for asylum. However, she would have still been eligible for withholding of removal and relief under the Convention Against Torture. And the reason that she would have met that prima facie case would have been that she obviously was the protected category of being a Christian, which is protected under both withholding of removal as well as relief under the Convention Against Torture, and the fact that Boko Haram, which is an extremist group, which would have been a group that would not, the government would not or could not control based upon the evidence that was submitted by way of the articles. Okay. Did you want to save some time for rebuttal? I'll save a little time, Your Honor. Okay. All right. Thank you. Thank you, Your Honor. Good morning. Good morning. May it please the Court, Colette Winston for Attorney General Loretta Lynch. This is the second petition for review that Ms. Inunue has filed. The first petition for review was denied by this Court in 2013. That dealt with the in absentia issue, right? Correct. It was a motion to reopen as well. It was her first motion to reopen, and it dealt with her in absentia hearing and whether she received notice of that hearing. Correct. But that's not before the Court today. Yes.  And her second, the issue before the Court is whether the Board of Immigration Appeals abused its discretion in determining that the petitioner failed to meet her burden of proving materially changed circumstances in Nigeria. There's no abuse of discretion here. First, the second motion to reopen was untimely. There's a 90-day time period. Right. Second, it was her second motion to reopen. It was obviously numerically barred. Only one motion to reopen is allowed. Now, she can overcome those bars if she can demonstrate a material change in country conditions. Exactly, Your Honor. Correct. That's what she tried to do here. Yes. So to excuse her lack of timeliness and her numerical excess, she had the burden of showing material changed country conditions in Nigeria. She failed to meet her bar. If she showed anything, she showed a continuation of conditions in Nigeria, not a worsening of conditions. And the time period has to be from the date of her hearing or hearing date, which was October 26 or 2010 generally, to 2013 when she filed her motion to reopen. So if we take a look at what she submitted with her second motion to reopen, she first submitted her asylum application. On page 36 and page 37 in her asylum application, she talks about continuous violence toward Christians. But there's a difference between several dozen or several scores of people who've suffered violence and hundreds and hundreds and hundreds have suffered violence in 2013. That's true, but she didn't show that there was increase in violence. She just showed that there was violence, a continuation of violence, by her own words in her asylum application. Then if you turn to her declaration on page 47, she talks about her declaration on reopening, her declaration originally. Her declaration that's attached to her asylum application. Oh, I see. So you're going back to that. Well, no. Her second motion to reopen has three attachments. The first attachment was her asylum application. The second attachment was her declaration in support of her asylum application. And the third attachment were five articles, two of which were blogs. So there was no new declaration contemporaneously with her motion to reopen? There was. There was a new declaration that was attached to her new asylum application. So there's really three items to look at. So if we look at the asylum application on two separate pages, she talks about continued violence toward Christians. But the articles that she submitted, don't they demonstrate that Boko Haram began to move to the south, where she's from? That article is the second article that she submitted. And, yes, it does say that Boko Haram was moving to central and south Nigeria. And she's from, as I understand it, she's from the southern part of Nigeria. Yes, correct. But that same article, interestingly enough, says that in 2012, 900 Christians were killed. In 2013, 120 mostly Christians were killed. So the number actually went down from 2012, which was 900, to 2013, which was 120. Where does your information of 2013 come from? In the 2013 article, in the second article that was attached. So if we look at the second article, let me pull that here for a second. Well, you're relying on a 2013 article. I thought that the 2013 State Department report suggested dramatic increase over the last several years. Your Honor, the State Department reports are not part of this record. Anybody can go look them up on Google, right? The BIA can go look them up. They're public records. They are public records, but the BIA did not review the country reports. The BIA reviewed the asylum application, the declaration, and the five, the three articles and two blogs that she submitted with her motion to reopen. The second article, what's the title of it? Let me just make sure. I printed them off, but I want to make sure I've got the, we're on the same. You're talking about the article that says Nigeria, 24 die and blast in Keno's Christian area? The second article was militants turn Nigeria into Christian killing field, and it's on page 53. Okay, I've got it. And it's only that one page. And you'll see, although it says they are pressing into central and southern states where Christians are in the majority. That's correct, Your Honor. And that's what that article says. And I took from that is that the violence is moving from the north to the southern part where she's from, and that's what her fear is. Right, but that's the only reference in everything that she submitted, that there is some extension of the violence. But that article also cuts back on that to say that there were fewer killings in 2013 than 2012. Doesn't she also allude to threats against her family by Islamic extremists in the more recent period, not at the time of her original application, not at the time of her first motion to reopening, but much more recently, against her immediate family? Yes, she does reference threats to her family in her asylum application, in her motion to reopen, the second motion to reopen. But what she didn't show is enough evidence. This is really a question of sufficiency. And the Board felt, although there is that sentence in that one article out of five, the Board felt there wasn't sufficient evidence to say that there's materially changed country conditions in Nigeria. There was maybe some evidence, but not enough evidence. Well, Boko Haram, at least what I read, it's a fairly militant group, correct? Correct. But what she had to show, and it was her burden, to show a change in that time period, from 2010 to 2013. And the fact that 2013 was terrible doesn't satisfy it. Well, I would assume, given those articles, that Boko Haram was kind of in the northern part of the country, where they had some control, and they were moving south. And that's the change, the change in circumstances. That is the change sufficient. And that's material for her, given her Christian faith, isn't it? So if we were to remand this case, could the BIA look at what's happened in 2013, 2014, and 2015 on remand, or are they stuck with a static record as to what changed conditions were in 2012? They're stuck with a static record. Why should that be? Because it's her burden. Well, she can ask to supplement the record if it goes back to the BIA. I guess she can do a third motion to reopen. No. If we send it back to the BID, grant the motion, grant the petition for review, send it back to the BIA, it's back there. She can always ask, leave to amend or augment her petition before the BIA, her motion. I suppose she could. She can do that. But at the time she filed her second motion, she did not attach any reports, country reports, religious freedom reports that the State Department puts out. Yes, I understood. There was nothing attached. So the board only had what she gave them to go on. And what she gave them wasn't sufficient. And that's the point. Even though there's one sentence in one of the five articles, a one-page article, that doesn't go into a lot of detail, it certainly doesn't say that 2010 was any different, or 2011, or 2012, or 2013. It talks about 2013, that conditions were bad, that they were pressing to the different areas of Nigeria. But it doesn't talk about what it was back in 2010. And that's the failing here. She had to show a change of country conditions, not just country conditions. All right. So I see that my time is about up. Eighteen seconds to go. Eighteen more seconds. If there are no further questions, I will forfeit my 18 seconds. Thank you. Thank you very much, Counsel. I believe you had a couple of minutes for rebuttal. Yes, Your Honor. Thank you. I just want to briefly address the issue of the evidence that was submitted. The issue, of course, with the religious freedom reports, as well as, again, the State Department reports, is that they clearly, at the time that we submitted, would not have reflected the recent problems that was happening in Nigeria with regards to the Boko Haram going to southern Nigeria, which is the reason why. However, the issue regarding the one article is that if you read the board's decision, it's almost as if they really didn't read the entire article, because they said that there was not any evidence. They didn't say that it was not sufficient evidence. They said that there was no evidence. And I believe that it could be remanded for the purposes of that issue as to the BIA looking into the sufficiency of the evidence, or possibly even, again, as you know. If it goes back to the BIA, can you augment the record before the BIA? You can, Your Honor. You can supplement the record. So that would be what we would request if we were given the opportunity to remand. What are conditions like in Nigeria now in the southern part of the country? Well, I think that since that time there has continued to be that expansion of the attacks by Boko Haram going not only from the northern part, but still expanding into the southern part. So they're, for the lack of— The government's not able to control the situation? No, they're not controlling it, Your Honor. Okay. All right. Thank you. All right. Thank you. Thank you, counsel. Thank you. The matter is submitted. We appreciate arguments by counsel. All right. Thank you.
judges: Reinhardt, Paez, Friedman